JAMES J. LEWIS, EMPLOYEE, PLAINTIFF-APPELLEE v. NORTH CAROLINA DEPARTMENT OF CORRECTION, EMPLOYER, SELF-INSURED (KEY RISK MANAGEMENT SERVICES, ADMINISTRATOR), DEFENDANTS-APPELLANTS

No. COA03-1447

(Filed 21 December 2004)

**1. Workers' Compensation— posttraumatic stress disorder— aggravation of diabetes—credibility of witnesses**

The Industrial Commission did not err in a workers' compensation case by concluding that competent medical evidence established that plaintiff's posttraumatic stress disorder (PTSD) arising from his employment as a probation officer aggravated his diabetes, because: (1) each testifying physician agreed that stress could aggravate or exacerbate diabetes; (2) all of plaintiff's treating physicians agreed that plaintiff's PTSD aggravated his diabetes; and (3) although defendants' witnesses ultimately came to the conclusion that the aggravation of plaintiff's diabetes was not caused by his PTSD, the Commission found the testimony of plaintiff's treating physicians more persuasive and the credibility of witnesses is for the Commission.

**2. Workers' Compensation— causation testimony—psychiatrists versus endocrinologists—posttraumatic stress disorder—aggravation of diabetes**

The Industrial Commission did not err in a workers' compensation case by relying on the causation testimony of psychiatrists rather than on the causation testimony of endocrinologists regarding the aggravation of plaintiff's diabetes, because: (1) the doctor defendants contend was in the best position to determine whether plaintiff's posttraumatic stress disorder (PTSD) exacerbated his diabetes testified that he knew nothing about PTSD; (2) even if the Commission had relied solely on the testimony of endocrinologists, competent evidence existed to support the Commission's findings when all of the testifying endocrinologists, including defendant's witnesses, averred that PTSD could have an effect on diabetes; and (3) each of plaintiff's three treating endocrinologists stated that plaintiff's PTSD did in fact cause the aggravation of plaintiff's diabetes.

Appeal by defendants from opinion and award entered 10 July 2003 by the North Carolina Industrial Commission. Heard in the Court of Appeals 30 August 2004.

LEWIS v. N.C. DEP'T OF CORR.

[167 N.C. App. 560 (2004)]

*Law Offices of George W. Lennon, by George W. Lennon and S. Neal Camak, for plaintiff-appellee.*

*Brooks, Stevens & Pope, P.A., by Kathlyn C. Hobbs and Bambee N. Booher, for defendants-appellants.*

McGEE, Judge.

The North Carolina Industrial Commission (Commission) entered an opinion and award on 13 November 1995 awarding compensation to James J. Lewis (plaintiff) arising from plaintiff's posttraumatic stress disorder acquired during plaintiff's employment with the North Carolina Department of Correction (defendant Department of Correction). The Commission found as fact and concluded as a matter of law that plaintiff's posttraumatic stress disorder was a compensable injury in that it was "due to causes and conditions which are characteristic of and peculiar to plaintiff's employment with [defendant Department of Correction] and is not an ordinary disease of life to which the general public is equally exposed outside of employment." Pursuant to an amended opinion and award of 26 March 1996, plaintiff was awarded salary continuation during the first two years of his disability, from 10 September 1992 to 10 September 1994; thereafter plaintiff was awarded temporary total disability compensation at the rate of $293.14 per week from 11 September 1994 until he returned to work or until further order of the Commission. Plaintiff was also awarded payment for all past and future medical expenses he incurred as a result of his compensable occupational disease.

Plaintiff filed a motion to compel payment and for other relief on 30 September 1996, stating in part that:

> 11. Plaintiff has submitted to Defendant medical bills for treatment for exacerbation of his diabetes related to the stress full [sic] conditions of his employment. . . . Plaintiff has obtained a medical opinion letter from Dr. Gianturco . . . indicating that these bills are related to the post-traumatic stress disorder. The Commission's order unequivocally states that Defendant shall pay medical costs incurred as a result of the covered occupational disease. Therefore these bills must be paid by Defendant.

The medical bills included treatment for exacerbation of plaintiff's diabetes, periodontal treatment, and bills for prescription medications.

**LEWIS v. N.C. DEP'T OF CORR.**

[167 N.C. App. 560 (2004)]

Subsequently, a deputy commissioner found as fact and concluded as a matter of law on 24 November 1997 that the issue regarding plaintiff's diabetes was *res judicata* and would not be addressed. Both plaintiff and defendants appealed to the Commission. The Commission affirmed the deputy commissioner's finding of *res judicata* on 12 October 1998.

Defendants appealed to this Court, assigning as error the Commission's conclusion that plaintiff's diabetes claim was *res judicata*. *Lewis v. N.C. Dep't of Corr.*, 138 N.C. App. 526, 528, 531 S.E.2d 468, 470 (2000). Plaintiff filed a cross-assignment of error arguing that the Commission failed to find and conclude that the record established that the compensable posttraumatic stress disorder caused an aggravation of his diabetes. *Id.* at 528, 531 S.E.2d at 470. This Court held that the Commission incorrectly applied the doctrine of *res judicata*, in that the deputy commissioner's conclusion of law regarding plaintiff's diabetes was not a final decision due to the subsequent application for review to the Commission. *Id.* at 528-29, 531 S.E.2d at 470. This Court also found that defendant Department of Correction was " 'entitled to have the full Commission respond to the questions directly raised by [its] appeal.' " *Id.* at 529, 531 S.E.2d at 470 (alteration in original) (quoting *Vieregge v. N.C. State Univ.*, 105 N.C. App. 633, 639, 414 S.E.2d 771, 774 (1992)). As a result, this Court remanded the case to the Commission to " 'conduct a hearing, make its own findings of fact and conclusions of law and enter an order resolving' the issue of whether plaintiff's post-traumatic stress disorder aggravated his diabetes." *Id.* at 529, 531 S.E.2d at 470 (quoting *Vieregge*, 105 N.C. App. at 641, 414 S.E.2d at 776).

On remand, the Commission entered an opinion and award on 10 July 2003, finding as fact and concluding as a matter of law that plaintiff's posttraumatic stress disorder exacerbated his diabetic condition, "which in turn caused or aggravated plaintiff's periodontal condition." The Commission also made the following pertinent findings of fact:

13. . . .[T]he Full Commission finds that the evidence of record shows a causal link between plaintiff's post-traumatic stress [disorder] and the exacerbation of his diabetic condition.

. . . .

15. The Full Commission finds that the record is replete with competent expert medical testimony as to the effect of anxiety and stress upon diabetes. . . .

**LEWIS v. N.C. DEP'T OF CORR.**

[167 N.C. App. 560 (2004)]

16. Defendants have contended that both Dr. Warner Burch and Dr. Dennis [sic] Becker opined that plaintiff's work related post-traumatic stress disorder had no effect on plaintiff's diabetic condition or symptoms. However, Dr. Burch and Dr. Becker each saw plaintiff merely for an evaluation and were not plaintiff's treating physicians. Therefore, Drs. Burch and Becker were not in a position to witness firsthand and note the effects of plaintiff's psychiatric disorder on his diabetes throughout plaintiff's experience with both illnesses. Thus, the Full Commission affords greater weight to the testimony of plaintiff's treating physicians, Drs. Gainturco [sic], Johnson, Handelsman, and Spratt, who were in a better position to witness the effects of plaintiff's work related post-traumatic stress disorder on his diabetes.

17. . . . Based on Dr. Schroer's [plaintiff's periodontist] opinion, the Full Commission finds that plaintiff's original compensable injury exacerbated or aggravated plaintiff's diabetic condition, which in turn caused or aggravated plaintiff's periodontal condition. Therefore, defendants are responsible for plaintiff's periodontal and diabetic treatment.

Based upon its findings of fact, the Commission made the following conclusions of law:

1. Plaintiff's original compensable injury, post-traumatic stress disorder, exacerbated and aggravated plaintiff's pre-existing diabetes and, thus, plaintiff is entitled to compensation.

. . . .

4. Since plaintiff's periodontal condition was caused or aggravated by his diabetic condition, which has been found to have been caused or aggravated by plaintiff's original compensable injury, defendants shall provide medical treatment as may be reasonably required to effect a cure, give relief, or lessen plaintiff's disability for both plaintiff's diabetic condition and his periodontal condition. Defendant is responsible for payment for all of plaintiff's treatment at Duke. Defendant is also responsible for payment for plaintiff's treatment by plaintiff's treating physicians, including Dr. Charles Johnson, Dr. Leonard Handelsman, and Dr. Susan E. Spratt.

(citations omitted). Defendants appeal.

This Court's standard of review in workers' compensation cases is "quite narrow." *Calloway v. Mem'l Mission Hosp.*, 137 N.C. App. 480, 484, 528 S.E.2d 397, 400 (2000). We are limited to the consideration of only two issues: (1) whether the Commission's findings of fact are supported by competent evidence; and (2) whether the conclusions of law are supported by the findings of fact. *Barham v. Food World, Inc.*, 300 N.C. 329, 331, 266 S.E.2d 676, 678 (1980). Findings of fact are supported by competent evidence, and therefore conclusive on appeal, " '[if] the record contains any evidence tending to support the finding.' " *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)).

It is the role of the Commission, not this Court, to weigh the evidence in a workers' compensation case. *Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 166, 265 S.E.2d 389, 390 (1980). "In weighing the evidence, the Commission is the sole judge of the credibility of witnesses and the weight to be given their testimony, and may reject entirely the testimony of a witness if warranted by disbelief of the witness." *Russell v. Lowes Prod. Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). Moreover, " '[t]he evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence.' " *Lewis v. Orkand Corp.*, 147 N.C. App. 742, 744, 556 S.E.2d 685, 687-88 (2001) (quoting *Adams*, 349 N.C. at 681, 509 S.E.2d at 414).

[1] Defendants assign as error the Commission's determination that competent medical evidence established that plaintiff's posttraumatic stress disorder aggravated his diabetes. Specifically, defendants argue that the evidence showed plaintiff's diabetes was never under control, even prior to the onset of plaintiff's posttraumatic stress disorder, and such was the real cause of the aggravation of plaintiff's diabetes.

The record in this case is replete with competent evidence and therefore the Commission's findings of fact are conclusive on appeal. Each testifying physician agreed that stress could aggravate or exacerbate diabetes. Dr. Leslie Domalik, expert in endocrinology, explained

[A]ny time that there are stressors[,] whether they be psychological or physical stressors, that tends to increase hormones such as catacholyamines [sic] and corticols which directly counter the

effect of insulin. As a result of that[,] insulin resistance is increased making it more difficult to control blood sugars; so in fact, yes, it's harder to control blood sugars in very stressful situations particularly if they are long-term. . . . [I]t's very clear at [times of high stress] that those blood sugars increase *despite anything that we do with regard to diet or exercise.* . . . [I]t's not speculation that blood sugars go up with stress.

(emphasis added).

Defendants' own witnesses similarly agreed that posttraumatic stress disorder could exacerbate a diabetic condition. Dr. Robert Rollins conceded, that "[s]tress can impair control of blood sugar and the behaviors needed to control blood sugar." Dr. Denis Becker stated "[s]tress invokes hormones that raise blood sugar and make one resistant to the activity of insulin. And in losing one's sensitivity to insulin, blood sugars rise. . . . If blood sugars rise, one has a risk or worsening of complications of diabetes." Finally, Dr. Warner Burch (Dr. Burch) testified that "stress can accentuate diabetes and make control worse."

All of plaintiff's treating physicians agreed that plaintiff's post-traumatic stress disorder exacerbated his diabetes. Dr. Leonard Handelsman, plaintiff's treating psychiatrist, stated: "[Plaintiff] has posttraumatic stress disorder arising from his employment as a probation officer for North Carolina and . . . this posttraumatic stress disorder and the anxiety arising from it exacerbate his diabetes and reduce his ability to manage this diabetic condition optimally." Dr. Charles Johnson, plaintiff's original treating endocrinologist, stated: "In my professional judgment, [plaintiff's] diabetes was out of control as a consequence [of his posttraumatic stress disorder]."

Although defendants' witnesses ultimately came to the conclusion that the aggravation of plaintiff's diabetes was not caused by his posttraumatic stress disorder, the Commission found the testimony of plaintiff's treating physicians more persuasive: "[T]he Full Commission affords greater weight to the testimony of plaintiff's treating physicians . . . who were in a better position [than defendants' experts] to witness the effects of plaintiff's work related post-traumatic stress disorder on his diabetes." The credibility of the witnesses is "for the Commission, not the courts, to determine." *Click*, 300 N.C. at 167, 265 S.E.2d at 391. Despite the varying testimony as to the cause of the aggravation of plaintiff's diabetes, we find

that there is competent evidence to support the Commission's findings of fact and conclusions of law.

**[2]** Defendants next assign as error the Commission's reliance on the causation testimony of psychiatrists rather than on the causation testimony of endocrinologists. Defendants argue that endocrinologists were in a better position to render a medical opinion as to the causation of the aggravation of plaintiff's diabetes. Defendants further argue that the Commission erred in not giving greater weight to Dr. Burch's testimony, since Dr. Burch was an endocrinologist who had reviewed all of plaintiff's medical records.

We find that defendants' argument is without merit. Dr. Burch, the doctor defendants contend was in the best position to determine whether plaintiff's posttraumatic stress disorder exacerbated his diabetes, testified, "I know nothing about post-traumatic stress [disorder]."

The evidence also shows that defendants' emphasis on the opinions of endocrinologists is misplaced. Dr. Burch, defendants' witness, testified that *both* endocrinologists and psychiatrists had a role in determining whether plaintiff's diabetes was aggravated by posttraumatic stress disorder. Dr. Susan Spratt, endocrinologist, testified that, in her opinion, a psychiatrist would be better qualified than an endocrinologist to render a medical opinion on whether plaintiff's diabetes was aggravated by posttraumatic stress disorder.

Even if the Commission had relied solely on the testimony of endocrinologists, competent evidence exists to support the Commission's findings. As previously discussed, all of the testifying endocrinologists, including defendants' witnesses, averred that posttraumatic stress disorder could have an effect on diabetes. Furthermore, each of plaintiff's three treating endocrinologists stated that plaintiff's posttraumatic stress disorder did in fact cause the aggravation of plaintiff's diabetes.

Again, it is not this Court's role to weigh the credibility of the various witnesses. *Russell*, 108 N.C. App. at 765, 425 S.E.2d at 457. The Commission engaged in a thorough analysis and carefully determined the witnesses to whom it would give the most credence. This Court is bound by this determination due to the overwhelming amount of competent evidence in the record. *Adams*, 349 N.C. at 681, 509 S.E.2d at 414.

Defendants also assign as error the Commission's finding that defendants were responsible for the treatment of plaintiff's periodontal disease because there was no evidence that plaintiff's posttraumatic stress disorder aggravated his diabetes. As we have determined that competent evidence established that plaintiff's posttraumatic stress disorder did in fact aggravate his diabetes, we need not address this assignment of error.

Defendants have failed to present an argument regarding their remaining assignments of error. Therefore, pursuant to N.C.R. App. P. 28(b)(6), these assignments of error are deemed abandoned.

Since the Commission's findings of fact were supported by evidence from the record, and its conclusions of law were supported by the findings, we affirm the order of the Commission.

Affirmed.

Judges WYNN and THORNBURG concur.